Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| ENRIQUE M. YERO VICENTE<br><br>Demandante-Apelado<br><br>Vs.<br><br>NIMAY AUTO CORP. Y OTROS<br><br>Demandado-Apelante | TA2026AP00126 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. EDP2013-0248<br><br>Sala: 701<br><br>Sobre: DAÑOS Y PERJUICIOS |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de abril de 2026.

Comparece la parte apelante, Nimay Auto Corp., procura la revocación de la *Sentencia* emitida el 25 de octubre de 2025 notificada el 29 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas. Por vía del dictamen apelado el foro primario declaró con lugar la demanda de título y ordenó al apelante, y a la codemandada, la señora Jarelis Rosa Perales el pago de $38,500.00 en concepto de daños y angustias mentales, $15,000.00 por concepto de honorarios de abogado más el interés legal prevaleciente hasta el saldo total de la sentencia.

Por los motivos expuestos en esta sentencia, *confirmamos* la sentencia apelada.

**-I-**

El 21 de agosto de 2013 la parte apelada, el señor Enrique M. Yero Vicente, presentó una demanda de daños y perjuicios en contra de la parte apelante compuesta por el apelante y la codemandada señora Rosa Perales. Alegó que, el apelante es un dealer de venta de autos, y que fue compañero consensual de la

señora Rosa Perales por unos años. Aseveró que la parte apelante, la señora Rosa Perales y un vendedor de autos empleado de la parte apelante, confabularon un fraude para adquirir un vehículo de motor del apelante a nombre del apelado. La señora Rosa Perales falsificó la firma del apelado, y con su crédito obtuvo el financiamiento para adquirir del apelante un vehículo Mitsubishi, Lancer, color blanco, año 2012, VIN número JA32UIFU3CYUO21434, tablilla HVQ-392 valorado por la suma de $21,694.00. Indicó que el 31 de agosto de 2012 la entidad financiera *Reliable Auto* se comunicó informándole que incurrió en atrasos con el pago del vehículo adquirido por la señora Rosa Perales. Alegó que en ese momento quedó enterado del fraude en su contra mediante el cual las partes codemandadas utilizaron su crédito e identidad para financiar a su nombre el automóvil descrito. Por ello, solicitó $150,000.00 en daños y perjuicios.

El 18 de diciembre de 2013, la parte apelante contestó la demanda negó las alegaciones y levantó defensas afirmativas. El juicio fue celebrado el día 20 de octubre de 2025 y el caso quedó sometido en igual fecha. El foro de primera instancia decidió a favor de la parte apelada, ordenó a la parte apelante y a la señora Rosa Perales el pago solidario de $38,500.00 en concepto de daños y angustias mentales, $15,000.00 por concepto de honorarios de abogado más el interés legal prevaleciente.

En la sentencia el foro primario consignó las siguientes determinaciones de hechos:

1. Nimay es una corporación con fines de lucro dedicada a la compra y venta de vehículos de motor.

2. Para la fecha en que se alega que ocurrieron los hechos en este caso, 28 de junio de 2012, Ramos prestaba servicios para Nimay como vendedor de auto y su salario era a base de comisiones.

3. Rosa Perales fue compañera consensual de Yero Vicente. La relación consensual de estos fue para los años 2006 al 2008 y durante la misma procrearon una hija.

4. Ramos, en común acuerdo con Rosa Perales consintió en que esta falsificara la firma de la parte demandante para utilizar su nombre y buen crédito con el fin de obtener la aprobación de un préstamo y, fraudulentamente, comprar un vehículo.

5. Como secuela del hecho alegado Rosa Perales finalmente adquirió de Nimay un vehículo Mitsubishi, Lancer valorado en $21,694.00.

6. La única alegación contra Nimay es que responde al demandante por los daños alegados bajo la responsabilidad vicaria que impone el Artículo 1803 del Código Civil de 1930, *supra.*

7. Rosa Perales incumplió con los pagos mensuales del préstamo y el 31 de agosto de 2012 Reliable notificó [a la parte] demandante del incumplimiento.

8. La Policía de Puerto Rico obtuvo la posesión del vehículo en cuestión, Mitsubishi, Lancer, y se lo entregó a Reliable.

9. El incumplimiento de pago a Reliable le afectó el crédito de Yero Vicente por espacio de 7 años. Durante dicho plazo la parte demandante se vio impedida de tomar bienes a crédito, incluyendo, pero sin limitarse, vehículos de motor e inmuebles.

10. Yero Vicente tuvo que mudarse al estado de Florida de los Estados Unidos de América debido al diagnóstico de cáncer de su esposa.

11. La esposa de Yero Vicente, padeciendo de cáncer y estando bajo tratamiento médico, tenía que utilizar el transporte público del estado para poder llevar a la hija de esta con la parte demandante a la escuela. Tenían que tomar un autobús por espacio de 40 minutos y luego regresar al hogar.

12. Yero Vicente estuvo viviendo alquilado hasta el 2020 cuando pudo adquirir una propiedad luego de que la reposesión del vehículo Mitsubishi, Lancer no formara parte de su historial crediticio.

13. Yero Vicente se transporta a su trabajo tomando 2 autobuses diarios, ida y vuelta a su vivienda. Así, estuvo por espacio de 8 meses cuando pudo adquirir a través de un

dealer un automóvil, el cual fue financiado directamente con la compañía y no mediante una entidad financiera debido a lo afectado que se encontraba su crédito.

14. Por algún tiempo, Yero Vicente estuvo yendo al psiquiatra y le fueron recetados 2 medicamentos para la depresión por la cual atravesaba.

15. Del expediente de Nimay, tras la venta del automóvil en cuestión, surge: (1) una certificación de empleo de Yero Vicente; (2) un recibo de la Autoridad de Energía Eléctrica a nombre de Yolanda Perales Muñoz; (3) copia de tarjeta electora de Yero Vicente; (4) copia de la tarjeta de Seguro Social de Yero Vicente; (5) copia del certificado de nacimiento de Yero Vicente; y (6) copia del pasaporte de Rosa Perales.

16. Con la venta del vehículo Mitsubishi, Lancer, Nimay recibió por parte de Reliable el chequet 98-86614 por la suma de $20,694.00, así, recibiendo un beneficio económico del acto delictivo cometido por su vendedor, Ramos.

La parte apelante solicitó reconsideración de la sentencia el 10 de noviembre de 2025, la denegatoria de la reconsideración solicitada fue emitida por el tribunal el 12 de enero de 2026 y notificada el 13 de enero de 2026. Todavía inconforme, comparece y señala los siguientes errores:

A. Erró el TPI al concluir que se probó la causa de acción de fraude, a pesar de que no existe prueba directa ni circunstancial suficiente que acredite, con certeza razonable, los elementos esenciales del fraude ni una conspiración entre la codemandada Rosa Perales y el vendedor Jorge Ramos.

B. Erró el TPI en la apreciación de la prueba presentada y adjudicar responsabilidad y daños a favor de la parte demandante.

C. Erró el TPI al hacer determinaciones de hecho esenciales —particularmente las determinaciones núm. 4 y 5— sin que existiera prueba en el récord que las sostuviera, incurriendo así en apreciaciones claramente erróneas de la prueba. Las determinaciones de que el vendedor "consintió" o actuó "en común acuerdo" con Rosa Perales no están apoyadas por ningún documento, ningún testigo, ninguna admisión, ni ninguna prueba pericial, lo que

convierte dichas determinaciones en conclusiones especulativas y no en hallazgos sustentados en evidencia fehaciente.

D. Erró el TPI al aceptar como probados daños económicos y crediticios que no fueron demostrados mediante evidencia objetiva, documental ni pericial, y que contradicen las admisiones expresas del propio demandante bajo juramento.

E. Erró el TPI al adjudicar daños sin que se presentara el informe de crédito del demandante, la prueba más idónea y accesible para acreditar el alegado impacto crediticio, en contravención a la Regla 110(G) de Evidencia.

F. Erró el TPI al no considerar la contribución del propio demandante a sus alegados daños, al omitir realizar gestiones razonables de mitigación tras ser notificado del atraso en el préstamo.

G. Erró el TPI al utilizar jurisprudencia de otra jurisdicción que incluye daños punitivos como base para cuantificar daños, cuando dicha figura a la fecha de los hechos no era reconocida en Puerto Rico.

H. Erró el Tribunal al imponer una cuantía excesiva y desproporcionada de honorarios de abogado sin realizar un análisis de razonabilidad ni proporcionalidad conforme a la naturaleza del caso y la prueba presentada.

I. Erró el TPI al determinar que el vendedor Jorge Ramos fungía como empleado de Nimay Auto Corp., y no como contratista independiente, y al imponer responsabilidad vicaria bajo el Artículo 1803 del Código Civil, cuando del récord incontrovertido surge que la relación jurídica entre Nimay y el vendedor carecía de los elementos esenciales de control, subordinación y dependencia económica requeridos para configurar una relación patrono empleado.

La parte apelada no compareció dentro del plazo reglamentario dispuesto para ello. Por tanto, procedemos a resolver con el beneficio de la comparecencia de la parte apelante, el contenido del expediente y el derecho aplicable.

**-II-**

**-A-**

El anterior Artículo 1802 del Código Civil, 31 LPRA sec. 5141, disponía que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado [...]".[1] Como se sabe, para probar una causa de acción por daños y perjuicios, el promovente deberá demostrar, mediante preponderancia de la prueba: (1) que se ha sufrido un daño; (2) por medio de un acto u omisión culposo o negligente; y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 483-484 (2022); *García v. E.L.A.*, 163 DPR 800, 809 (2005).

Así pues, el que un demandante ostente el derecho a recibir indemnización por un alegado daño presupone la existencia de un nexo causal entre el daño y el factor que lo origina. Es decir, sólo corresponde indemnizar los daños que son consecuencia del hecho que obliga a la indemnización. *Rivera Jiménez v. Garrido & Co., Inc.*, 134 DPR 840, 851-852 (1993).

Se ha establecido que la culpa o negligencia consiste en "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021); *López v. Porrata Doria*, 169 DPR 135, 151 (2006). Cuando se alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba respecto a la alegada negligencia le corresponde a la parte demandante. *Colón y otros v. Kmart y otros*, 154 DPR 510,

---

[1] Hacemos referencia al Código Civil de Puerto Rico de 1930 por los hechos del caso haber ocurrido durante la vigencia de este.

521 (2001); *Matos v. Adm. Servs. Médicos de PR*, 118 DPR 567, 569 (1987).

## -B-

En materia de apreciación de prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959). Por ello, este Foro apelativo intermedio evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V; Véase, además, *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto.
>
> *Dávila Nieves v. Meléndez Marín, supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al

apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645 (1986). Por tanto, como foro apelativo, no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad que hace un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio, por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345 (2009). Así pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que, el foro de instancia es el único que observa a las personas que declaran y aprecia su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR, supra*. Véase, además, *Trinidad v. Chade*, 153 DPR 280 (2001); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Véase, además, *Rivera Menéndez v. Action Services, supra*, págs. 448-449; *Monllor Arzola v. Soc. de Gananciales*, 138 DPR 600 (1995). No obstante, si de un examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972). Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172, 181 (1985).

**-C-**

La valoración del daño es la tarea dificultosa asignada al juzgador que motivado por la sana discreción busca dar sentido al principio de la justicia. *Blás v. Hosp. Guadalupe*, 146 DPR 267, 339 (1998); *Rosado v. Supermercado Mr. Special*, 139 DPR 946, 954 (1996); *Urrutia v. A.A.A.*, 103 DPR 643, 647 (1975). El proceso de valoración de daños es complejo debido a la falta de un mecanismo preciso que, permita transformar en moneda los daños sufridos por una persona. *Rodríguez Cancel v. A.E.E.*, 116 DPR 443, 451 (1985). La dificultad en la evaluación de los daños es mayor respecto a las angustias y sufrimientos mentales al ser conceptos intangibles, condiciones o sensaciones mentales o psicológicas. Se incluyen bajo esta noción diversas categorías de perjuicios, tales como el daño emocional, ansiedad, pérdida de afecto y otros daños similares de naturaleza impalpable. B. Dobbs, *The Law of Torts;* Vol. 2, West Group. St. Paul Minn., 2001, pág. 821. Véase además, A. J. Amadeo Murga, *El Valor de los Daños en la Responsabilidad Civil*, 2da ed., España, 2012, pág. 172. "Conceder cuantías insuficientes o ridículamente bajas por concepto de daños sufridos a causa de actuaciones antijurídicas tiene el efecto práctico de aminorar la responsabilidad civil a la que deben estar sujetas dichas actuaciones." Amadeo Murga, *op. cit.,* pág. 19. Una valoración exagerada tiene un efecto punitivo, ajeno a nuestro ordenamiento civil. *Íd.* Por ello, no debemos intervenir con la valoración de daños realizada por el foro primario, salvo cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013).

### -D-

El peso de presentar prueba que sostenga una postura recae sobre el promovente de la acción. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894 (2011). La Regla 110 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110, obliga al promovente a presentar evidencia sobre las aseveraciones en el asunto en litigio. Así, según la Regla 110 de las Reglas de Evidencia, *supra*, los hechos no quedan demostrados con meras alegaciones. *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR 1001 (2012). El profesor Chiesa Aponte comenta: "[e]l lenguaje de la regla resulta filosóficamente correcto, pues quien afirma la existencia de algo, tiene la obligación de presentar evidencia para demostrarlo". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 49. Esto responde al entendido jurídico de que, la parte que afirma la cuestión en controversia está obligada a persuadir al juzgador sobre la forma particular en que ocurrieron los hechos que alega. *Rivera Figueroa v. The Fuller Brush Co.*, *supra*, pág. 913.

### -E-

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), regula lo concerniente a la imposición de honorarios de abogado. La regla dispone que, en caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. La determinación sobre si una parte ha procedido con temeridad o no descansa en la sana discreción del tribunal sentenciador. *Ramírez v. Club Cala de Palmas*, 123 DPR 339, 349 (1989). El concepto de temeridad se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. El

propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad es el de establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987).

El Tribunal Supremo ha establecido que, existe temeridad en las siguientes situaciones: (1) hacer necesario un pleito que se pudo evitar; (2) prolongar innecesariamente un pleito; (3) causar que otra parte incurra en gestiones evitables; (4) contestar el demandado una demanda y negar su responsabilidad total, aunque la acepte posteriormente; (5) cuando el demandado se defiende injustificadamente de la acción; (6) si el demandado en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad, limitando la controversia a la fijación de la cuantía a ser concedida; (7) si el demandado se arriesga a litigar un caso del que se desprendía prima facie su negligencia; y (8) negar un hecho que le consta es cierto al que hace la alegación. *Fernández v. San Juan Cement Co., Inc.*, *supra*, págs. 718–719.

### -*III*-

Comenzamos por fijar las controversias de hechos resueltas por el foro de primera instancia. Es que, en el extenso trámite de este caso, casi 14 años, el tribunal emitió un par de sentencias parciales. En ellas puso punto final a controversias que, la parte apelante pretende revivir en su apelación.

### A. Los hechos materiales el caso

En ocasión de disponer de una moción de sentencia sumaria promovida por la parte apelante el foro primario emitió la *Sentencia Parcial* del 10 de agosto de 2017, en ella apuntó las siguientes determinaciones de hechos:

1. Nimay Auto Corp. ("Nimay") es una corporación con fines de lucro dedicada a la compra y venta de vehículos de motor.

2. Para la fecha en que se alega ocurrieron los hechos en este caso el señor Jorge Ramos ("vendedor") prestaba servicios para Nimay como contratista independiente.

3. La señora Jarelis Rosa Perales ("señora Rosa") fue compañera consensual del señor Enrique M. Yero Vicente ("demandante").

4. El vendedor, en común acuerdo con la señora Rosa, consintió que la señora Rosa falsificara la firma del demandante para utilizar su nombre y buen crédito con el fin de obtener la aprobación de un préstamo y, fraudulentamente, comprar un vehículo.

5. Como secuela del hecho alegado la señora Rosa finalmente adquirió de Nimay un Mitsubishi Lancer valorado en $21,694.00.

6. La única alegación contra Nimay es que responde al demandante por los daños alegados bajo la responsabilidad vicaria que impone el Artículo 1803 del Código Civil, *supra*.

7. El vehículo adquirido por la señora Rosa fue financiado por Reliable Financial Services, Inc.

8. La señora Rosa incumplió con los pagos mensuales del préstamo y el 31 de agosto de 2012 Reliable notificó al demandante del incumplimiento.

9. La Policía de Puerto Rico obtuvo la posesión del vehículo en cuestión, Mitsubishi Lancer, y se lo entregó a Reliable.

10. La única alegación contra Reliable, según surge de la Segunda Demanda Enmendada, lee como sigue:

    6. Reliable Financial Services, Inc., es la entidad bancaria que en la actualidad tiene posesión del vehículo objeto de esta demanda, ya que fue quien financió el mismo,

por lo que es parte indispensable en el caso de autos.

En atención a los hechos transcritos, el tribunal concluyó como cuestión de derecho:

Conforme con la norma jurídica anteriormente discutida y con lo dispuesto por el Artículo 1803 del Código Civil, supra, concluimos, que acorde a los hechos del presente caso Nimay obtuvo un beneficio económico de la gestión realizada por el vendedor y, por tanto, viene obligado a responder vicariamente.

No le asiste la razón a Nimay en su primer argumento. Por haber obtenido un beneficio económico como resultado de la transacción entre la señora Rosa y el vendedor, Nimay es responsable vicariamente por los daños reclamados en la demanda.

[...]

Según resuelto por nuestra jurisprudencia antes citada, en este tipo de caso cuando se le impone responsabilidad vicaria al patrono (o principal), el demandante tiene una causa de acción directa contra el patrono.

Evidentemente en el caso que tenemos ante nuestra consideración el demandante tenía una causa de acción directa e independiente contra Nimay. Conforme lo anteriormente discutido Nimay tenía la opción de traer al pleito al vendedor mediante una demanda de coparte acorde establece la Regla 16.1 de Procedimiento Civil, *supra.*

[...]

De conformidad con la norma jurídica atinente y a lo anteriormente discutido, resolvemos, que Nimay es responsable vicariamente por los daños alegados en la Demanda, además, que el señor Jorge Ramos no es una parte indispensable en este caso.

En la *Sentencia Parcial* del 17 de junio de 2019 el tribunal consignó las siguientes determinaciones de hechos al disponer de una nueva moción de sentencia sumaria también promovida por la parte apelante:

1. El 28 de junio de 2012 Nimay Auto Corporation vendió un vehículo marca Misubishi Lancer blanco de 2012.

2. Nimay Auto es una compañía que se dedica a la ven[t]a de autos.

3. Reliable Auto financió la unidad vendida por Nimay por la suma de $23,821.50.

4. El vehículo aparece al nombre del demandante, Enrique Yero Vicente.

5. Los documentos de venta y financiamiento fueron preparados a nombre de Enrique Yero Vicente.

6. La factura y el contrato de compra del auto fueron preparados en el dealer Nimay Auto a nombre de Enrique Yero Vicente.

7. Los documentos aparecen firmados por Enrique Yero Vicente.

8. El demandante, Enrique Yero Vicente, no compareció al dealer a gestionar la compra del vehículo objeto de esta reclamación.

9. El demandante no firmó ni autorizó a nadie a firmar por él o a su nombre los documentos mencionados en el hecho incontrovertido número 5.

10. El vendedor de la unidad fue Jorge Ramos.

11. El documento titulado "Contrato de Venta al Por Menor…" aparece firmado por un vendedor de Nimay Auto.

12. El documento titulado "Factura de Vehículo de Motor" es un documento oficial de Nimay Auto firmado por un gerente de esa corporación.

13. Quien obtuvo y retuvo la posesión física del vehículo desde el 28 de junio de 2012 fue Jarelis Rosa Perales.

La sentencia sumaria es un remedio de carácter discrecional. Favorece la pronta y justa solución de un pleito que, carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 277 (2021); *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 662-663 (2017*); Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 555 (2011); *Ramos Pérez v. Univisión*, 178 DPR 200, 212-214 (2010); *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 184 (2005). La Regla 36.3, 32 LPRA Ap. V, R. 36.3, exige que, si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las

hubiere, y alguna otra evidencia surge que no existe controversia real y sustancial en cuanto a ningún hecho material, y que como cuestión de derecho procede, el tribunal debe dictar sentencia sumaria a favor de la parte que la promueve. Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (e); *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 224-225 (2015); *Meléndez González v. M. Cuebas, Inc.*, *supra*, pág. 109*; SLG Zapata Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). El Tribunal Supremo define un hecho material como aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Meléndez González v. M. Cuebas, Inc.*, *supra*, pág. 110*; Ramos Pérez v. Univisión, supra*, pág. 213. Agregue que es norma reiterada que los derechos y obligaciones objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). Los planteamientos objeto de adjudicación final y firme por el foro de primera instancia no pueden reexaminarse. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, *supra*, pág. 607.

En consideración a los antecedentes judiciales del caso y en estricta obediencia a la doctrina de la ley del caso descartamos los errores denominados con la letra "A", "B", "C", e "I". *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Sobre las cuestiones fácticas y jurídicas señaladas en estos errores, el tribunal de primera instancia dictó sentencia el 10 de agosto de 2017, y el 17 de junio de 2019. Regla 36.1 de Procedimiento Civil, *supra*; *Meléndez González v. M. Cuebas, Inc.*, *supra*, pág. 109; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Ambas sentencias son finales, firmes e inapelables. Por tanto, constituyen la ley de este caso.

En consecuencia, no existe controversia de hecho en cuanto a los hechos base de la demanda. La señora Jarelis Rosa Perales

en conjunto con el señor Jorge Ramos, vendedor de Nimay, idearon un plan mediante el cual la primera utilizó la identidad de la parte apelada y sus credenciales comerciales para obtener de un tercero dinero prestado para adquirir el vehículo de motor descrito en la demanda. En cuanto a la parte apelante, su negligencia estriba en no haber tomado las precauciones debidas para evitar la ocurrencia de tal confabulación de uno de sus empleados en contra de la parte apelada. *Pons v. Engebretson,* 160 DPR 347, 355 (2003); *Monllor v. Soc. de Gananciales,* 138 DPR 600, 604 (1995).

En este caso, era previsible que en el curso normal del negocio administrado por la parte apelante un tercero o un empleado, quiera aprovechar ilegalmente el buen nombre de un particular para completar una venta. En otras palabras, sobre la base de los hechos incontrovertidos del caso, las actuaciones de Jarelis Rosa Perales y Jorge Ramos son la causa eficiente que permite la imputación jurídica de negligencia a la parte apelante en este caso, ya que creó la situación de peligro que produjo el resultado dañoso reclamado en la demanda, situación que benefició económicamente a Nimay Auto. J. Puig Brutau, *Fundamentos de Derecho Civil,* 1ra ed., Barcelona, Ed. Bosch, 1983, T. II, Vol. III, págs. 92.

La existencia del acto u omisión negligente y, además, el elemento de causalidad está presente en este pleito, pues el daño alegado se debió con mayores probabilidades a la negligencia de la parte apelante. *Nieves Díaz v. González Massas,* 178 DPR 820, 843-844 (2010); *López v. Porrata Doria, supra,* pág. 150. Recalcamos, que la relación de causalidad entre el daño reclamado y el acto negligente no quedó establecida a base de una mera especulación o conjetura, más bien sobre hechos plausibles o creíbles y además incontrovertidos. *Castro Ortiz v. Mun. de*

*Carolina,* 134 DPR 783, 793 (1993); *Rodríguez Crespo v. Hernández,* 121 DPR 639, 649-650 (1988).

Ahora bien, el propósito del designio entre Jarelis Rosa Perales y Jorge Ramos es irrelevante para la doctrina aquiliana, la casuística solo necesita la demostración de la ocurrencia de un hecho culposo, un daño y el nexo causal entre ambos. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, págs. 483-484. Reiteramos, en este caso quedó demostrado el hecho culposo y el nexo a los daños reclamados por el apelado. La parte apelante falló al carecer de los controles necesarios en sus procedimientos de evaluación de solicitudes de compra para evitar el robo de identidad perpetrado por Jarelis Rosa Perales y Jorge Ramos. Una simple llamada de corroboración por el gerente de ventas o por la "oficina de arriba" hubiera evitado el siniestro ocurrido y el gasto innecesario de recurso y tiempo en el presente pleito.

Por tanto, la parte apelante responde civilmente por su propia negligencia y vicariamente por la negligencia de Jorge Ramos. *Valle v. E.L.A.,* 157 DPR 1, 18 (2002); *Ramos v. Carlo,* 85 DPR 353, 358 (1962). Impuesta la responsabilidad sobre el apelante surge "el deber de resarcir al damnificado al otorgarle un valor económico al daño sufrido". *García Pagán v. Shiley Caribbean, etc.,* 122 DPR 193, 206 (1988).

### B. Los daños y las angustias mentales

El apelado testificó la forma en que su vida quedó afectada por el acto culposo del apelante:

> P. Bien. Con relación a la actuación en este caso de Nimay, de haber vendido ese carro a nombre suyo, ¿qué, si algo, le afectó a usted eso?
>
> R. ¿En qué me afectó el vender el carro a mi nombre?
>
> P. Sí. Cuando usted no lo autorizó.
>
> R. Todo.

P. ¿Qué es "todo"? Dígalo que es "todo".

R. Siete años de mi vida. De mi vida, de mi hija, de mi esposa, de mi otra nena, de todo. Siete años que ese carro me salió en el crédito reposeído hasta que solito se salió porque lo máximo que puede estar en el crédito son siete años. Los siete años de mi vida que tuve que -- nada pude coger. Nada. Cero.

P. Y habiendo transcurrido siete años, ¿qué, si algo, pudo usted lograr que no había logrado durante esos siete años?

R. Tengo una hermosa casa de cuatro cuartos, tres baños, una piscina. Tengo dos vehículos. Gracias a Dios, ¿verdad? En el mismo 2020 – el carreo se me sale del crédito en el 2019 y ya en el 2020, ya gracias a Dios, hice todo lo que no pude hacer en siete años. Ahora tengo que trabajar siete años más de mi vida para reponer los siete años que pude haber adelantado, lamentablemente.

Transcripción de la prueba oral., págs. 30, 31.

Vemos como el acto culposo orquestado entre Jarelis Rosa Perales y Jorge Ramos afectó al apelado en su puntuación crediticia durante siete años. La noticia de la reposesión del vehículo estuvo apuntando en su reporte de crédito. Además, el apelado ofreció destalles específicos sobre el efecto del suceso dañoso en su vida personal y de familia:

R. ¿Y cómo le afectó eso a usted durante esos siete años, el cual usted no pudo manejar su crédito por eso?

R. Sí, yo empecé con la mueblería, cogí un juego de cuarto, tenía un juego de sala. Ya iba a comprarme una casa – no a comprármela, sino coger una casa, ¿verdad? Porque no tenía para comprarla, pero la iba a coger financiada. Eso o pudo pasar, porque ya al tener un carro reposeído en mi crédito, pues lo primero que me dijeron fue "¿Cómo está tu crédito? Y yo: "Está más o menos, pero tiene un carro reposeído". Me dijeron que no va – no voy para ningún lado con eso.

P. Bien.

R. Yo le dije que estaba bajo investigación, pero en nada, no pude sacar una casa. A mi esposa no pude sacarle un carrito para que pudiera ir a la universidad. Tuvimos que nada más, en una guagua que yo tenía, los dos trabajar,

dejarme, buscarme. Así vivimos. Alquilados tuvimos que vivir todo ese tiempo.

Y, por cuestiones de salud, le diagnostican con cáncer en Puerto Rico y no decidimos venir para Florida, que en Florida tiene un tremendo hospital en Tampa. Y ella se vino primero con mi nena pequeña para Florida, con su madre, a vivir en lo que yo dejaba de trabajar y preparaba todo para enviar la guagua. Pero renunció un viernes y lamentablemente ese mismo fin de semana, inminente el paso de María, y me quedé – sabes, me quedé en María dos meses. A los dos meses me llevan un teléfono, que no había comunicación todavía, y me dicen que mi esposa lleva una semana en el hospital, botando – vomitando sangre vieja. Y me – le llevaron al aeropuerto y me consiguieron un pasaje para al otro día irme. Llego a la Florida sin nada. Aquí estuve a pie. No pude mandar la guagua, porque eso fue después de María; nada estaba moviéndome en Puerto Rico. So aquí estuve a pie, yendo a trabajar todos los días. Desde las 5:00 de la mañana me levantaba para coger dos guaguas, para llegar al trabajo, para virar dos guaguas igual.

Mi esposa, que tiene un solo pulmón – nació así – tenía que llevar a mi hija todos los días a la escuela. Algo que a un carro me tomaba 15 minutos, a ella le toma 40. Todos los días, por ocho meses.

Conseguí un "dealer" que, gracias a Dios, no me – no lo hizo por el banco, y pude comprarle un carro. Le tuve que dar un pronto de 2,500, pero pude comprarme al fin una guagua. Pero eso fue como ya de ocho meses a un año después de estar todos los días yendo a trabajar en guagua, mi esposa todos los días bajo el frío – si han viajado a Florida, hace frío, hacer calor, llueve – todo ese tiempo solamente porque mi crédito estaba manchado por siete años.

R. ¿Qué más te voy a decir? Que me dan ganas de llorar cuando me acuerdo, verdad, porque no – me troncharon, me troncharon mucho tiempo de mi vida y de mi nena y de mi esposa.

Transcripción de la prueba oral., págs. 31, 32, 33.

El robo de identidad efectuado por Jarelis Rosa Perales y Jorge Ramos dificultó la vida del apelante, de su esposa y su hija. Particularmente en la compra de un medio de trasporte, un hogar, en el cuidado médico de la familia, y llegar y regreso de sus lugares

de trabajo. Es razonable inferir, a partir del testimonio del apelado que, de no haber ocurrido el hecho culposo, las dificultades por las que atravesó el apelante junto a su familia hubieran sido menores o al menos igual al promedio de dificultades que atraviesa una familia en similar posición económica y social a la del apelado.

El apelado no solamente confrontó las complicaciones descritas en su testimonio transcrito arriba, sino que también su estado emocional de salud mental quedó afectado:

> P. Don Enrique, desde el 2012, que fue para la fecha que usted se entera de alguien que había solicitado la compra de un carro, que no fue – aunque a nombre suyo y usted no lo firmó, me ha indicado, ¿cómo eso le afectó a usted emocionalmente?
>
> R. Pues... Ay Dios mío, sí, no -- depresión, no podía dormir. En un momento pensé: "Mirá, me echo la soga al cuello". O sea, ya yo tenía todo preparado. Mi nena acababa de nacer en el 2012, ahí mismo cuando pasó lo del carro, ya mi nena tenía dos meses. Preparándome para mudarme para una casa, ya tenía el juego de cuarto, tenía el juego de sala, y ahí me quedé trancado, para vivir alquilado, pagando alquilado, sin poder coger nada. Ni la mesa ni un juego de cuarto pude coger, por el crédito; todo lo tuve que comprar usado o guardar y comprarlo "cas", en efectivo, que no es fácil.
>
> Nadie – no recomiendo eso a nadie. Y estuve así, pagando todo de mi bolsillo, siete años estuve así, pagando todo de mi bolsillo, siete años estuve. Gracias a Dios me pude comprar la casa exactamente en el [2019] se sale lo del carro de mi crédito, y, gracias a Dios, ya en el 2020 tenía la casa que tanto hubiese podido tener quizás antes, pero, desgraciadamente, verdad...
>
> Tuve que ir a un psiquiatra, que me recetaron Prozac, Dilantin, verdad, porque – porque no es fácil. El pobre, verdad, lo único que tiene es el crédito. Sin crédito, no – por más dinero que tengas, sin crédito, no, no -- ¿sabes?, no vas a mantenerte igual. Digo mi pensar, verdad, porque así es que vivo yo.
>
> Transcripción de la prueba oral., págs. 33, 34, 35.

En cuanto al testimonio del apelado, el apelante, por vía de los errores "D", y "E" la parte apelante disputa el testimonio del

apelante y la asignación de credibilidad al testimonio efectuada por el tribunal de primera instancia. Dice que, el apelado falló al presentar prueba pericial para demonstrar los daños sobre los cuales testimonió. Que no presentó su informe de crédito para demostrar que su capacidad de tomar prestado quedó afectada y que el apelado no realizó "gestiones razonables de mitigación tras ser notificado del atraso en el préstamo".

El apelante olvida que el *quantum* de prueba requerido en los casos civiles es preponderancia de prueba. Es principio general de las Reglas de Evidencia de Puerto Rico que "la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Regla de Evidencia 110 (d), 34 LPRA Ap. VI. R. 110. Debido a ello, en nuestra jurisdicción es posible demostrar un hecho mediante la preponderancia de prueba mediante testimonio directo. Por tanto, creída la prueba y no refutada como en este caso, no era necesaria la presentación de prueba pericial según intima el apelante debido. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Tampoco era necesario que el apelado presentara su informe de crédito para demostrar el daño causado por el acto de los codemandados. Véase, *Zambrana v. Hospital Santo Asilo de Damas,* 109 DPR 517 (1980); *Berríos v. U.P.R.,* 116 DPR 88 (1985); *Rivera v. E.L.A.,* 99 DPR 890 (1971); *Castro v. Payco, Inc.,* 75 DPR 63 (1953); *Colón v. Shell Co. Ltd.,* 55 DPR 592 (1939). El apelado describió en detalle y de forma creíble las dificultades que durante meses y años enfrentó para proveer a su familia las comodidades y conveniencias mínimas a las cuales la mayoría de la población trabajadora está acostumbrada. En todo caso correspondía al apelante traer evidencia que desvalorizara el testimonio ofrecido ante el tribunal. Evidencia 110 (a), 34 LPRA Ap. VI. R. 110.

Empero no lo hizo y ahora sujeta su apelación a meras alegaciones y, como sabemos, meras alegaciones no constituyen prueba. *Asoc. Auténtica de Empl. vs. Municipio de Bayamón*, 111 DPR 527, 531 (1981). Conforme a lo anterior, el testimonio de la parte apelada sobre las angustias y daños que experimentó a consecuencia de las actuaciones de la parte apelante mereció entera credibilidad del juzgador de hechos en este pleito. Por tanto, es prueba suficiente para demostrar la ocurrencia de los daños testificados durante el juicio.

Por tanto, los señalamientos de "D" y "E" relativos a la presentación, admisión y apreciación del testimonio del apelante sobre sus daños y angustias mentales no nos parecen que tuvieran el efecto de alterar la determinación del foro primario, ni la nuestra, sobre la adjudicación de hechos en torno a la existencia de los daños alegados.

### C. Mitigación de daños

Sobre el error indexado con la letra "F" el apelante argumenta que, el apelado omitió mitigar sus propios daños. Sin embargo, el testimonio muestra una versión distinta de hechos a la postulada por el apelante. Conforme testificó el apelante, este acudió a una de las corporaciones crediticias encargadas de la publicación de los reportes de créditos de todos los ciudadanos y solicitó la corrección de la nota de reposesión del vehículo que tanto afectó su crédito. No obstante, a pesar de su esfuerzo, pues el apelado inclusive dio seguimiento a la petición, la respuesta de la casa crediticia fue una investigación que dependía de la "conclusión del caso". Los esfuerzos del apelado no ridieron fruto y tuvo que esperar siete años. Sobre estos extremos el apelado testificó:

> P. Bien. Okey. Como resultado de lo que usted
> se entera de Reliable, que lo estaba buscando,
> ¿qué usted hizo?

[...]

R. Pues procedo a hacer una declaración jurada y la llevé a Reliable y la llevé a TransUnion en Santurce. La llevé a los dos sitios. La llevé primero a Montehiedra, a Reliable, una, y después a otra que tenia se la llevé a TransUnion para el crédito.

P. ¿Qué hizo usted constar en esa declaración jurada?

R. Yo notifiqué en la declaración jurada que en ningún momento yo pedí un préstamo, ni un carro ni nada que parezca. Les dejé saber que yo no era el dueño de ese vehículo.

P. Y le pregunto: ¿qué, si algo, hicieron estas dos entidades crediticias con relación a eso que usted presentó, la declaración jurada? Si sabe.

R. ¿Que qué hicieron?

P. Sí. Si sabe.

R. Nada.

Transcripción de la prueba oral, págs. 28, 29.

En el contrainterrogatorio el apelante reiteró y confirmó su versión de gestiones realizadas para tratar de resolver la situación con su crédito:

P. Mire, le pregunto, don Enrique: usted hizo esa declaración jurada para borrar el asunto del carro de TransUnion, ¿correcto?

R. Sí.

P. En la agencia crediticia.

R. Sí.

P. Y lo hizo 12 días luego de recibir esas llamada, septiembre de 2012.

R. Puede ser, sí.

P. Okey.

R. No me acuerdo exactamente el día, pero...

P. Y a pesar de eso, usted dice que el crédito suyo estuvo dañado por siete años, a pesar de que usted le explicó en una declaración jurada a TransUnion de la razón por la cual ese vehículo aparecía a su nombre en el – en su informe de crédito. ¿Me dice que siete años después duró –

R. Sí.

P. Okey. O sea, ¿Qué ellos no hicieron nada, según usted?

R. Nadie hizo nada. Yo hice todo lo que yo pude, y nadie –

R. (Ininteligible) se olvidó de mí.

P. ¿Qué usted hizo durante esos siete años con TransUnion para tratar de mitigar sus daños, de que hiciera claro de que ese carro usted no lo había comprado? ¿Nada?

R. Nada, eso estaba bajo investigación. Cuando comuniqué con ellos, estaba bajo investigación. No podía hacer nada hasta que no se resolviera.

P. O sea, que luego de – luego de someter la declaración jurada, usted no le hizo absolutamente nada durante esos siete años, ¿correcto? ¿No hizo nada?

R. Correcto.

Transcripción de la prueba oral, págs. 54, 55, 56.

Considerado el testimonio vertido, concluimos que el error no ocurrió. Como demuestra la prueba el apelado sí trató de mitigar los daños ocasionados por la negligencia del apelante.

### D. Valoración del daño

Mediante el error "G" el apelante cuestiona la cuantía monetaria asignada por el tribunal a los daños evidenciados durante el juicio. Conforme expuesto en el alegato del apelante:

En la Sentencia, el TPI concedió la siguiente cantidad por concepto de daños: $38,500.00 en concepto de daños y angustias mentales. Para determinar la cantidad de daños, el TPI utilizó como referencia el caso Rozwell v. Philanz Oldsmobile, Inc., 187 A.D. 2d 938 de 18 de noviembre de 1994, en el cual se otorgaron $21,000.00 por fraude relacionado con la venta de un vehículo.

No obstante, se trae a la atención de este Honorable Tribunal de Apelaciones, que dicho caso citado por el TPI en su Sentencia, versa sobre una mujer que fue engañada por un dealer y el vendedor de autos, quienes incurrieron en fraude al hacerle pensar que el vehículo adquirido era nuevo, cuando ello no era cierto. En ese caso, el Tribunal le concedió $1,000 por angustias mentales y el resto de la cuantía por daños punitivos.

La tarea de estimar y valorar daños no es faena de simples cálculos. *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 909 (2012). No existen fórmulas científicas de especificidad exacta que indiquen cómo se justiprecia el dolor y el sufrimiento. *Mena Pamías v. Jiménez Meléndez,* 212 DPR 758, 769 (2023); *Santiago Montañez v. Fresenius Medical Care,* 195 DPR 476, 490 (2016); *Herrera, Rivera v. S.L.G. Ramírez–Vicéns,* 179 DPR 774 (2010); *Vázquez Figueroa v. E.L.A.,* 172 DPR 150, 154 (2007); *Nieves Cruz v. U.P.R.,* 151 DPR 150, 169–170 (2000). La meta debe ser, pues, llegar a un intermedio, esto es, ni exageradamente alta ni exageradamente baja. *Santiago Montañez v. Fresenius Medical Care, supra,* pág. 490; *Riley v. Rodríguez de Pacheco,* 119 DPR 762 (1987). En todo caso, al medir los daños en un caso, el juzgador de hechos debe hacerlo sobre una estricta base de correspondencia con la prueba. Véanse, *S.L.G. v. F.W. Woolworth & Co.,*143 DPR 76 (1997); *Rivera v. Tiendas Pitusa, Inc.,* 148 DPR 695 (1999).

La parte apelante no contradice la cuantía de los daños probados de conformidad a la valoración realizada en casos similares. Véanse, *Mena Pamías v. Jiménez Meléndez, supra*; *Santiago Montañez v. Fresenius Medical Care, supra.* Sino que solo cuestiona la suficiencia de la prueba. Según reseñamos, la declaración directa de un solo testigo, de ser creída por el juzgador de los hechos, es prueba suficiente de cualquier hecho. *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Conforme expone en su alegato: "[a]hora bien, lo declarado por el demandante en el juicio no puede ameritarle credibilidad al TPI ni ser base para las determinaciones de hechos ni ser base para el cómputo de la cuantía de los daños toda vez que Yero mintió al tribunal bajo juramento". Todavía así, argumenta como improcedente el caso guía utilizado por el foro de primera instancia. La decisión guía utilizada por el foro de primera instancia para este pleito en específico con relación a la valoración

y estimación de daños no es precedente obligatorio, sino que solo sirvió como punto de partida. *Nieves Cruz v. U.P.R.,* 151 DPR 150, 177 (2000). Es importante señalar que el tribunal ajustó la indemnización conforme al precedente en correspondencia a los hechos particulares del caso. Tal actuación está revestida de razonabilidad *prima facie*, y no será alterada salvo una demostración contraria por quien cuestiona la adjudicación. *Mena Pamías v. Jiménez Meléndez, supra.* En este recurso el apelante tenía el peso de la prueba para demostrar la procedencia de la modificación que solicitó, "[q]uien solicita la modificación debe demostrar las circunstancias que lo justifiquen". *Rivera Rodríguez v. Tiendas Pitusa*, Inc., 148 DPR 695, 700 (1999). La parte apelante debía demostrar error en las actuaciones del foro primario al alejarse de la casuística existente para valorar daños, pero no lo hizo. La mera alegación del apelante sobre la improcedencia de la compensación concedida es insuficiente para permitir modificarlas.

La tarea de valoración de daños debe residir, dentro de lo posible, en el juicio del juzgador de los hechos, enmarcado dentro de un análisis de razonabilidad. De no existir algún error manifiesto, parcialidad o prejuicio en tal apreciación, no corresponde nuestra intervención. *Mena Pamías v. Jiménez Meléndez, supra,* pág. 779-780. La cuantificación del daño efectuada por el foro apelado descansó en el ejercicio discrecional, prudente, juicioso y razonable sobre la base de los hechos incontrovertidos animado por un sentido de justicia y de conciencia humana. *Concepción Guzmán v. A.F.F.*, 92 DPR 488, 502 (1965). El tribunal fijó la cuantía, como una compensación a daños evidenciados, en proporción razonable conforme a precedente similar. Por ello, estimamos la adjudicación como razonablemente, es decir, ni extremadamente baja ni desproporcionadamente alta. En vista de la falta de error

manifiesto, parcialidad o prejuicio en la apreciación del foro apelado no corresponde nuestra intervención con la asignación de valor sobre los daños demostrados durante el juicio.

### E. La temeridad del apelante

Por último, la parte apelante asevera que la cuantía impuesta en concepto de honorarios de abogado es "excesiva y desproporcionada". La Regla 44.1 (d) de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 44.1 (d), permite la imposición de honorarios de abogados en aquellos casos en que una parte o su abogado actúe con temeridad o frivolidad. El concepto de temeridad se refiere a las actuaciones de una parte que provocan un pleito eludible o la indebida prolongación de este. Una vez determinada la existencia de temeridad, la imposición de honorarios de abogado es obligada. *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 188 (2008).

En cuanto a la imposición de honorarios de abogados, damos deferencia a la determinación de la ilustrada sala sentenciadora, pues percibió durante el trámite del pleito que la parte apelante litigó y prolongó la reclamación innecesariamente. La actitud temeraria demostrada por el apelante queda demostrada, inclusive en esta etapa apelativa, al pretender re litigar cuestiones de hechos decididas por el tribunal de primera instancia de forma final y firme en un caso del cual se deprende *prima facie* su negligencia. En definitiva, la actuación contumaz del apelante prolongó innecesariamente la resolución final de presente litigio, ocasionó inconvenientes y gastos innecesarios al apelado.

No erró el foro primario al imponer honorarios de abogado a la parte apelante por haber demostrado temeridad en este caso.

### -*IV*-

Por los fundamentos antes expuestos, *confirmamos* la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones